UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN MARTINI,

                Plaintiff,                                     Hon. Janet T. Neff

v.                                                Case No. 1:08-CV-501

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/


## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative

record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall

be conclusive.

        Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges

to submit proposed findings of fact and recommendations for disposition of social security appeals,

the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## PROCEDURAL POSTURE

Plaintiff was 44 years of age at the time of the ALJ's decision.  (Tr. 31, 66).  He possesses a General Equivalency Diploma (GED) and worked previously as a construction worker. (Tr. 128, 357).

Plaintiff applied for disability benefits on June 24, 2004, alleging that he had been disabled since November 18, 2003, due to back pain and anxiety.  (Tr. 66-68, 120, 144-47). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 32-65, 148-60).  On December 6, 2006, Plaintiff appeared before ALJ Michael Finnie, with testimony being offered by Plaintiff and vocational expert, Susan Rowe.  (Tr. 352-402).  In a written decision dated February 14, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 19-31).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 5-8).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On November 6, 2003, Plaintiff "fell from a height of about 8 to 10 feet" on to a wood floor. (Tr. 162). Plaintiff landed "directly on his back" and did not hit his head. (Tr. 162). Plaintiff was taken to a hospital where he reported that his pain was localized to the lower left area of his back. (Tr. 162). Plaintiff was ambulatory and reported that he was not experiencing any neck pain, headache, or breathing difficulties. (Tr. 162).

An examination of Plaintiff's neck revealed normal range of motion and no evidence of tenderness. (Tr. 163). An examination of Plaintiff's back revealed tenderness, but no evidence of spasm, contusion, or ecchymosis. (Tr. 163). Straight leg raising was negative and there was no evidence of hip or abdominal injury. (Tr. 163). X-rays of Plaintiff's spine revealed "normal alignment" and "no evidence of acute injury." (Tr. 163). Plaintiff was given pain medication and discharged home. (Tr. 163).

On December 3, 2003, Plaintiff began participating in physical therapy. (Tr. 173-75). On December 18, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "mild" disc degeneration and "small" disc protrusions without nerve root impingement. (Tr. 166).

On January 13, 2004, Plaintiff telephoned Dr. Paula Kilmer's office requesting a refill of Vicodin. (Tr. 297). Concerned that Plaintiff was "shopping around with different physicians for narcotic medications," the doctor's office contacted a local pharmacy which revealed that within the past month Plaintiff had obtained five prescriptions (from five different doctors) for 160 tablets of pain medication. (Tr. 297). Dr. Kilmer informed Plaintiff that she would provide pain medication for him only if he would agree to participate in "random drug testing." (Tr. 297). Plaintiff contacted

4

Dr. Kilmer's office the next day and informed them that he had obtained a Vicodin refill from a different physician.  (Tr. 298).

Treatment notes dated January 21, 2004, indicate that Plaintiff had recently cancelled or failed to appear for six scheduled physical therapy sessions.  (Tr. 300).  Plaintiff was discharged from physical therapy on March 3, 2004.  (Tr. 171).  At the time of his discharge, Plaintiff had attended only four therapy sessions.  (Tr. 171-85).  Treatment notes dated March 5, 2004, indicate that Plaintiff had an "anxiety drug seeking addiction."  (Tr. 230).

On March 11, 2004, Plaintiff reported to the emergency room complaining of low back pain.  (Tr. 186-88).  Plaintiff rated his pain as 10 on a scale of 1-10.  (Tr. 187).  Plaintiff reported that he was "out" of pain medication.  (Tr. 187).  Plaintiff was given a prescription for 30 Vicodin tablets and discharged home.  (Tr. 186-88).

On March 17, 2004, Plaintiff reported to the emergency room complaining of back pain.  (Tr. 189-90).  Plaintiff reported that he was out of Vicodin.  (Tr. 190).  Plaintiff was given morphine, following which he experienced "complete resolution" of his pain.  (Tr. 190).  Plaintiff was given prescriptions for Vicodin and Norflex and discharged home.  (Tr. 190).

On March 21, 2004, Plaintiff reported to the emergency room complaining of back pain.  (Tr. 191-92).  Plaintiff reported that he was out of Vicodin, which the doctor found "a little bit hard to believe" considering that Plaintiff was prescribed 30 Vicodin four days earlier.  (Tr. 192).  Plaintiff reported that he has also been prescribed "Xanax, Klonopin, Neurontin, and Norflex, which he says he 'has thousands of.'"  (Tr. 193).  Plaintiff acknowledged that "he has had drug abuse problems with Xanax in the past."  (Tr. 192).

The doctor reported that "with distraction," Plaintiff "had no pain to palpation of his entire back." However, when "prompted," Plaintiff reported "discomfort" in his lumbar spine. (Tr. 193). The doctor observed no evidence of neurological abnormality and straight leg raising was negative. (Tr. 193). Plaintiff reported that he had recently participated in an MRI examination which revealed "dramatic" results, but the doctor, after reviewing the results of the MRI examination, observed that the results were instead "not that significant." (Tr. 193). Plaintiff was given morphine and Vicodin and discharged home. (Tr. 194).

On April 3, 2004, Plaintiff was prescibed 40 Vicodin tablets. (Tr. 196). On April 8, 2004, Plaintiff participated in an MRI examination, the results of which revealed "mild degenerative changes without gross impingement of nerves." (Tr. 201).

On May 4, 2004, Plaintiff reported to the emergency room, complaining of back pain. (Tr. 202-04). Plaintiff was given Dilaudid and discharged home. (Tr. 202-04). On May 6, 2004, Plaintiff reported to the emergency room, complaining of back pain. (Tr. 205-07). Plaintiff was given Dilaudid and discharged home. (Tr. 205-07). On May 8, 2004, Plaintiff again reported to the emergency room complaining of back pain. (Tr. 208-09). Plaintiff was given 12 Vicodin tablets and discharged home. (Tr. 208-09). On May 10, 2004, Plaintiff reported to the emergency room complaining of back pain. (Tr. 210-12). Plaintiff reported that he was "out of all his pain medications." (Tr. 211). Plaintiff was given Dilaudid and discharged home. (Tr. 211-12).

On May 13, 2004, Plaintiff was examined by Dr. Melanie Novak. (Tr. 220-22). Plaintiff reported that he was experiencing lower back pain which radiated into his left lower extremity. (Tr. 220). Plaintiff walked with a "normal" gait and was able to heel and toe walk. (Tr. 221). Straight leg raising was "weakly" positive and Plaintiff exhibited "moderately restricted"

6

range of spinal movement.  (Tr. 221).  Noting that Plaintiff was presently "taking excessive amounts of Vicodin," Dr. Novak prescribed MS Contin to Plaintiff.  (Tr. 222).  Plaintiff was also administered a lumbar epidural steroid injection.  (Tr. 222).

On May 27, 2004, Plaintiff was examined by Dr. Novak.  (Tr. 218-19).  Plaintiff reported that he received "excellent pain relief" from his recent epidural injection.  (Tr. 218).  Plaintiff was administered another epidural injection.  (Tr. 218).  Dr. Novak reported that Plaintiff was capable of working subject to the following restrictions: (1) no lifting more than 25 pounds and (2) no excessive bending.  (Tr. 214).

On July 8, 2004, Plaintiff reported to St. Joseph County Community Mental Health Services "requesting Xanax" because his doctor "is refusing to prescribe [it] for him."  (Tr. 223).  Plaintiff acknowledged that he "still has some Xanax left."  (Tr. 223).  A nurse informed Plaintiff that because of "his past history of misusing it," she would not provide him with Xanax.  (Tr. 223).  Plaintiff became "angry" and told the nurse that he would "sue" them.  (Tr. 223).

On July 30, 2004, Plaintiff participated in a consultive examination conducted by Erin Campbell, M.A., Limited License Psychologist.  (Tr. 239-44).  The results of a mental status examination were unremarkable.  (Tr. 241-43).  Plaintiff was diagnosed with (1) adjustment disorder with mixed anxiety and depressed mood; (2) alcohol abuse, sustained partial remission; (3) intermittent explosive disorder.  (Tr. 243).  Plaintiff's GAF score was rated as 53.  (Tr. 243).

X-rays of Plaintiff's lumbar spine, taken on November 10, 2004, revealed "mild" degenerative disc disease with no evidence of fracture or subluxation.  (Tr. 275).

On January 24, 2005, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "mild protrusions at L1-2, L2-3, L4-5, and L5-S1, without evidence of nerve root impingement at any of these levels." (Tr. 276).

On May 5, 2005, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "small disc protrusions. . .without root compression." (Tr. 278). The results of an electromyography examination, performed the same day, were "normal." (Tr. 280-83).

On June 8, 2005, Plaintiff participated in an MRI examination of his lumbosacral spine, the results of which revealed a "minor degree of disc margin spurring," but "normal alignment and maintenance of disc spacing." (Tr. 288). The results of a bone body scan, performed the same day, were "normal." (Tr. 287).

On December 15, 2005, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "mild" stenosis at L4-5 and degenerative changes throughout "without compromise of neural structures." (Tr. 307-08).

At the administrative hearing Plaintiff testified that he is disabled "because [he] cannot perform anything [he] used to be able to do." (Tr. 360). Plaintiff testified that he suffers from constant back pain which ranges in severity from 7-10 on a scale of 1-10. (Tr. 362). Plaintiff reported that he can stand for 5-10 minutes and walk 500 feet. (Tr. 363). As for his ability to sit, Plaintiff reported that he can sit for "a while." (Tr. 363). Plaintiff reported that he is unable to lift two jugs of water, each of which weighs "about" eight and one-half pounds. (Tr. 380).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) emphysema, (3) adjustment disorder with mixed anxiety and depressed mood, (4) intermittent explosive disorder, and (5) alcohol abuse in sustained partial remission. (Tr. 21).  The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment

---

[1]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 22).  The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations.  (Tr. 22-31).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

## 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can occasionally lift/carry 20 pounds and can frequently lift/carry 10 pounds, (2) during an 8-hour workday he stand/walk for six hours and sit for six hours, (3) he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, (4) he can never climb ladders, ropes, or scaffolds,

10

and (5) he must avoid concentrated exposure to fumes, odors, dusts, gases, and environments with poor ventilation. (Tr. 22). The ALJ further determined that Plaintiff, due to his mental impairment, is limited to the performance of simple, routine tasks with only occasional contact with the general public, co-workers, and supervisors. (Tr. 22). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Susan Rowe.

The vocational expert testified that there existed approximately 21,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 398-99). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed

which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

     a.   The ALJ Properly Evaluated Plaintiff's Credibility

In assessing Plaintiff's RFC, the ALJ concluded that Plaintiff's "allegations regarding the intensity, duration and limiting effects of his physical and mental conditions are not supported to the extent alleged by his history of medical treatment, the objective medical evidence, treating source observations and opinions, and his activities of daily living." (Tr. 29). Plaintiff asserts that the ALJ failed to give proper weight to his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531.  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

In assessing Plaintiff's credibility, the ALJ devoted more than seven pages of his opinion to a detailed examination of the evidence in this matter. (Tr. 22-29). As the ALJ correctly concluded, Plaintiff has "failed to follow through with physical therapy recommendations" and his "mental health treatment has been irregular at best." (Tr. 29). The ALJ observed that Plaintiff has

engaged in drug seeking behavior by simultaneously obtaining narcotic pain relievers from multiple physicians. (Tr. 29). The ALJ further observed that Plaintiff's "lack of consistency in seeking medical treatment and following treatment recommendations is inconsistent with the disabling symptoms that [Plaintiff] alleges." (Tr. 29). Finally, neither the objective medical evidence nor the opinions expressed by Plaintiff's care providers supports Plaintiff's allegations of extreme pain and limitation. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

### b. Plaintiff is not Entitled to Remand

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 328-51). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 5-8). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that

the Commissioner would have reached a different result if presented with the new evidence. *McMahon*, 499 F.3d at 513(citing *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988)).

First, much of the material in question is simply copies of evidence that was presented to, and considered by, the ALJ. (Tr. 271-74, 320-23, 344-51). This material, therefore, is not new. While the remaining material is new, it fails to satisfy the materiality requirement.

On March 8, 2007, Plaintiff participated in an electrodiagnostic examination, the results of which revealed evidence of radiculopathy at L4, L5, and S1, but there was no evidence of acute denervation. (Tr. 334-36). On March 28, 2007, Plaintiff telephoned Dr. Jonathan Hopkins' office and threatened the doctor's assistant because Dr. Hopkins "would not provide him with more medications." (Tr. 340). On April 2, 2007, Plaintiff participated in an MRI examination, the results of which revealed "no appreciable changes" from Plaintiff's December 15, 2005 MRI. (Tr. 331-33).

On May 2, 2007, Dr. Hopkins completed a report concerning Plaintiff's limitations. (Tr. 329-30). The doctor reported that Plaintiff can "never" lift any amount of weight. (Tr. 330). Dr. Hopkins reported that during an 8-hour workday, Plaintiff can "stand and/or walk less than 2 hours." (Tr. 330). The doctor, however, declined to indicate the extent to which Plaintiff can sit during an 8-hour workday. (Tr. 330). The doctor also reported that Plaintiff can never engage in repetitive grasping, reaching, pushing, pulling, or fine manipulation activities. (Tr. 330). Dr. Hopkins reported that Plaintiff did not suffer from any mental limitations. (Tr. 330).

On May 16, 2007, Plaintiff was examined by Dr. Hopkins. (Tr. 328). Plaintiff reported that he was experiencing severe back pain. (Tr. 328). Plaintiff exhibited "normal strength

15

throughout. . .and preservation of reflexes."  (Tr. 328).  Plaintiff requested that the doctor provide him with "a few morphine tablets."  (Tr. 328).

Plaintiff asserts that the May 2, 2007 opinion expressed by Dr. Hopkins is sufficient to merit remand.  The Court disagrees as this opinion enjoys no support in the medical record and is contradicted by substantial medical evidence as detailed herein.  Thus, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result.  Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, the Court recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  March 30, 2009                              /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge